## The Taunton Copper Company *versus* The Merchants' Insurance Company.

A policy of insurance on goods or property, in general terms, on board a ship, does not protect goods or property laden on deck, unless such risk be expressly taken by the insurer.

A policy on a particular kind of property by name, which, from its peculiar nature, is usually carried on deck, for its own safety or for the safety both of itself and of the ship, will protect such property when so laden, for the insurer is presumed to know the usage.

Under a policy on " copper " on board a vessel from New York to Taunton, a quantity of copper in pigs was laden on deck and was lost in Long Island Sound. It was *held*, that the insurers were not liable for the loss, notwithstanding the existence of a usage to carry on deck, without notice to the shipper and at the same rate of freight as if under deck, such goods as were not liable to be injured by dampness, it not being proved that insurers had ever paid for losses upon goods so laden, unless under a special contract, or unless, from the nature of the property, they were presumed to have assumed the particular risk.

Assumpsit on a policy of insurance, dated October 13, 1835, whereby the defendants caused the plaintiffs " to be insured, lost or not lost, $50,000 on property (copper or zinc) on board any vessel or vessels in which it may be shipped for their account between 20th October instant, and 1st February next, attaching to earliest shipments, as aforesaid, at and from New York to Taunton, or at and from Taunton to New York, with liberty, between Taunton and Somerset, to substi-

tute river craft for vessels." The premium was one fourth of one per cent.

The trial was before *Putnam* J.

It appeared, that on the 29th of October, 1835, the plaintiffs caused a quantity of copper, in pigs, to be shipped on board the sloop William Carter, at New York, to be carried to Taunton ; and that 114 pigs of the copper were stowed in the hold with other cargo, and 106 pigs were stowed on deck. The sloop was in proper trim to be seaworthy, and the deck load was stowed and secured in the usual manner. In the course of the first night after the sloop left New York, and while she was in Long Island Sound, she came into collision with the steamer General Jackson, in a fog, and immediately sank ; and all the property on board was totally lost.

It further appeared, that for the period of forty years, or thereabouts, a usage or custom had existed in the carrying trade between Taunton and New York, Somerset and New York, and Providence and New York, for the masters of vessels to stow and carry on deck, without notice to the shipper, and at the same rate of freight as if stowed under deck, such goods as were not liable to be injured by dampness, when their vessels could be so loaded with other merchandise in the hold as to be seaworthy ; that pig copper was within this usage ; and that the copper in question was laden on deck by the master of the sloop, without notice to the consignors or consignees, under and by virtue of such usage.

It was testified that the length of the voyage and the character of the navigation between Taunton and Somerset and New York, and Providence and New York, were substantially the same ; and very numerous cases of masters of vessels acting under this usage during the period before mentioned, were proved ; but all the witnesses made a distinction between vessels going inside, and those going outside of Long Island, and limited their testimony as to the usage, to the navigation inside of Long Island.

The defendants, after preliminary proof of loss, paid the plaintiffs for so much of the copper as was stowed under deck, but refused to pay for such as was laden on deck ; and the present action was brought to recover the value of that which was laden on deck

Taunton
Copper Co.
*v.*
Merchants'
Ins. Co.

Taunton
Copper Co.
*v.*
Merchants'
Ins. Co.

Upon this evidence the judge directed, that the plaintiffs should be nonsuit. If the whole Court should be of opinion, that the nonsuit was rightly ordered, it was to stand ; otherwise it was to be taken off, and a new trial to be had.

*April 1st.*

C. P. *Curtis* and B. R. *Curtis,* for the plaintiffs. The policy in question has reference to a settled usage of the trade in which the vessel was engaged, not contravening any principle of law, and not inconsistent with the object or terms of the policy. A usage of this character will be presumed to have been known to the insurers and taken into consideration by them when the contract was made ; and the effect will be the same as if the insured were expressly authorized by the terms of the policy to follow such usage. The parol evidence of usage was not offered to contradict or control the policy, but merely to explain the meaning of its terms. *Clark* v. *United M. & F. Ins. Co.* 7 Mass. R. 369 ; *Bedford Comm. Ins. Co.* v *Parker,* 2 Pick. 8 ; 1 Park on Ins. 49 ; Hughes on Ins. 169 ; 1 Marshall on Ins. 271 ; *Columbian Ins. Co.* v. *Catlett,* 12 Wheaton, 387 ; 1 Phillips on Ins. 88, 182 ; *Allegre* v. *Maryland Ins. Co.* 6 Harris & Johns. 408 ; *Moxon* v. *Atkins,* 3 Campb. 200 ; *Uhde* v. *Waters,* 3 Campb. 16 ; *Robertson* v. *Clarke,* 1 Bingh. 445 ; *Salvador* v. *Hopkins,* 3 Burr. 1707 ; *Coit* v. *Commercial Ins. Co.* 7 Johns. R. 385 ; *Astor* v. *Union Ins. Co.* 7 Cowen, 202 ; *Dow* v. *Whetten,* 8 Wendell, 160 ; *Scott* v. *Bourdillion,* 5 Bos. & Pul. 213 ; *Kingston* v. *Knibbs,* 1 Campb. 508, note ; *Stewart* v. *Bell,* 5 Barn. & Ald. 238 : *Wadsworth* v. *Pacific Ins. Co.* 4 Wendell, 33 ; *Noble* v. *Kennoway,* 2 Doug. 510 ; *Pelly* v. *Royal Exch. Ass. Co.* 1 Burr. 348 ; *Eager* v. *Atlas Ins. Co.* 14 Pick. 141 ; *Ross* v. *Thwaite,* and *Backhouse* v. *Ripley,* 1 Park on Ins. 21 ; 1 Stark. on Evid. 419 ; *Blackett* v. *Royal Ex. Ass. Co.* 2 Crompt. & Jerv. 244 ; *Da Costa* v. *Edmunds,* 4 Campb. 142 ; *Barber* v. *Brace,* 3 Connect. R. 13 ; Valin, *lib.* 2, *tit.* 1, *art.* 12, and *lib.* 3, *tit.* 8, *art.* 13 ; Merlin's Repertoire, *tit. Contribution aux Jets de la Mer,* and *tit. Cabotage ; Gould* v. *Oliver,* 4 Bingh. N. R. 134 ; *Warren* v. *Manuf. Ins. Co.* 13 Pick. 518. *Murray* v. *Hatch,* 6 Mass. R. 477 ; *Halsey* v. *Brown,* 3 Day, 346 ; *City Bank* v. *Cutter,* 3 Pick. 414 ; *Renner* v. *Bank of Columbia,* 9 Wheat. 581 ; *Jones* v. *Fales,* 4 Mass. R. 245 ; *Lincoln and Kennebec Bank* v.

*Page*, 9 Mass. R. 155. We are not bound to prove a usage for insurers to pay for losses on goods laden upon deck. It is sufficient for us to prove a usage to carry goods on deck. *Rucker* v. *London Ass. Co.* 2 Bos. & Pul. 432, note ; *Gould* v. *Oliver*, 4 Bingh. N. R. 134 ; *Blackett* v. *Royal Exch. Ass. Co.* 2 Crompt. & Jervis, 247 ; *Hall* v. *Ocean Ins. Co.* 21 Pick. 472.

*Webster* and *Cooke*, for the defendants, to the point that the evidence of usage was inadmissible, it being in express contradiction of the terms of the policy, cited 2 Phillips on Ins. 482 ; *Creery* v. *Holly*, 14 Wendell, 30 ; *Loraine* v. *Tomlinson*, 2 Dougl. 585 ; *Schooner Reeside*, 2 Sumner, 569 ; and to the point, that the defendants were not liable for the loss upon such of the copper as was laden on deck, notwithstanding the existence of the usage, *Wolcott* v. *Eagle Ins. Co.* 4 Pick. 429 ; *Donnell* v. *Columbian Ins. Co.* 2 Sumner, 377 ; *Dodge* v. *Bartol*, 5 Greenl. 286 ; *Cram* v. *Aikin*, 1 Shepley, (13 Maine,) 229 ; Park on Ins. 21 ; *Eager* v. *Atlas Ins. Co.* 14 Pick. 141 ; *Homer* v. *Dorr*, 10 Mass. R. 26.

Putnam J. delivered the opinion of the Court. The defendants have paid for the copper which was stowed in the hold, and refuse to pay for that which was stowed on deck ; and the question is, whether they are liable to pay for that part of the cargo.

The cause is of importance in regard to the amount of property ; but of much more importance as it regards the law of insurance.

It has been often said, that the contract of insurance is obscure in its terms, but that by a course of judicial decisions it has been rendered sufficiently certain to answer the valuable purposes for which it was made. The construction which has from time to time been given by courts in judicial decisions, and the ordinances of commercial countries, and the known usages, touching this contract, have been introduced and considered as part of the law merchant of the civilized world ; and we are not disposed to narrow the view. We are not disposed to encumber it with local exceptions, which are not obviously allowed by the nature of the subject, and the liberal inferences to be made from the law itself, as proved by well known principles, established usages and judicial decisions.

*Taunton Copper Co. v. Merchants' Ins. Co.*

*April 8th.*

Is there any difference in regard to the liability of under-writers, to pay for the loss of property whether it be on deck, or under deck ?  Now we believe there is ; and that as a general rule, underwriters upon a policy upon goods or property, are not liable to pay for the property stowed on the deck. That general rule has its exceptions, as indeed all rules have.  *Exceptio probat regulam*.  It is obvious, that property on deck is in greater hazard than that which is under the cover of the deck ; and of course underwriters should require a greater premium ; and, in some cases, the property on deck so lumbers it up, and obstructs the seamen in their work and management of the vessel, as to expose even the ship itself to much greater hazard than if the deck were clear for action ; and hence it is, that when the deck load is thrown over as a jettison, the owners of the cargo under deck do not contribute for the loss in general average.

As a general rule then, we are of opinion, that underwriters are not answerable for property stowed on deck.

In the Code de Commerce, *lib*. 11, *tit*. 12, *art*. 421, it is said that the effects laden on the deck of a vessel contribute, if saved.  If they be thrown overboard or damaged by jettison, the owner is not admitted to demand contribution ; his only remedy is against the master.  The French Ordinance is to the same effect. *Lib*. 3, *tit*. 8, *art*. 13. And so is the ordinance of Hamburgh.  And the same rule is adopted in England.   Abbott on Shipping, (Story's ed. 1810,) 393 ; Benecke & Stevens, (Phillips's ed.) 293.

The law which considers goods on deck as not to be dealt with as goods under deck, is recognized in *Gould v. Oliver*, 4 Bingh. N. R. 134, cited by the defendants.   It was an action by the owner of a deck load of timber against the owner of the ship, for contribution for a jettison.   It was not a question between different shippers of goods, nor between *assured* and *underwriters*, but between shipper and owner of the ship Under the particular circumstances of that case, (to which we shall again allude,) it was held, that the plaintiff was entitled to recover.  We refer to it now for the declaration of *Tindall* C. J., which supports the general rule, that goods laden on deck are not covered by the policy, as goods are, which

are under deck. He observes, that the rule generally established seems to have been, that for goods so laden, underwriters are not responsible.

The case of *Ross* v. *Thwaite*, Park on Ins. 26, is to the same effect. That was a policy on time on the captain's goods ; and the loss was chiefly for goods lashed on the deck. It was proved, that none of those things are within the general policy on goods ; that goods so laden are in greater hazard ; and that the *premium* is greater. And Lord *Mansfield* expressed his opinion accordingly. He thought it to be consistent with reason, and understood the usage to be so. That decision was in 1776, sixty-three years ago. And the same rule was recognized by *Chambre* J. and a special jury, in the case of *Backhouse* v. *Ripley*, Abbott on Shipping, (Story's ed. 1829,) 355, note ; see also there cited, *Myer* v. *Vander Deyl*, before Lord *Ellenborough*, in 1803. And such is the opinion of the learned editor of that work. Our law, says he, is the same.

In *Lenox* v. *United States Ins. Co.* 3 Johns. Cas. 178, the court say, that an insurance does not extend to goods on deck unless expressly mentioned. That decision was had in 1802, when *Kent* was Chief Justice of that very learned Court. In *Smith* v. *Wright*, 1 Caines's R. 43, it was held, that for goods shipped on deck and ejected for the preservation of ship and cargo, there is not to be any contribution. Nor is the owner liable, in such case, as a carrier. That was decided in 1803, and related to some bales of cotton stowed on deck.

The general rule unquestionably is, that a policy on goods or merchandise or property, in general terms, on board a ship, does not extend to goods, property or merchandise laden on deck

But it is competent for insurers to take the risk of goods on deck, if the fact be expressly disclosed to them by the assured, or if the property or goods are named and they are such as are usually carried on deck, and not under deck. And the plaintiffs, if they can maintain their action, must recover on the exception to the general rule, and not upon the rule itself.

They rely greatly upon the case of *Da Costa* v. *Edmunds*, 4 Campb. 142, which was tried before Lord *Ellenborough*, in 1815. It was a policy on forty carboys of vitriol. The car-

boys were lashed on deck and were broken in a storm, and the vitriol took fire ; and the whole was necessarily thrown overboard. The judge left it to the jury to say, whether it was usual to carry the vitriol on deck, or whether it was properly stowed ; and those facts being found in the affirmative by the jury, the judgment was given for the plaintiff, and a rule to show cause why there should not be a new trial was refused.

Now we think that case was decided with reference to the nature of the property which was insured. It was highly combustible and dangerous, and required great care in stowing it. It was proved, that it was usual to stow vitriol below, bedding the carboys in sand, and it was very frequently carried on the decks of ships. The underwriters are to be presumed to know such was the usage.

And the plaintiffs argue strenuously, that in the case at bar, they have proved a general usage for forty years to carry goods on deck which are not liable to be injured by dampness, and that the defendants knew, or must be presumed to have known and to have contracted in reference to that usage ; and that the property insured was expressed to be " copper or zinc," and known not to be liable to be injured by dampness, and so they are entitled to recover on the usage, if not by the express terms of the policy.

Now we think, that no inference was to be drawn from the nature of the property injured in the case at bar, that it was to be stowed or managed in any other manner than was common to goods and merchandise laden on board ships. These are ordinary goods, and the underwriters (to use the language of Lord *Lyndhurst*) " would naturally suppose, that they would be placed where ordinary goods are placed, and that they would incur the hazard only of ordinary goods." *Blacket* v. *Royal Exchange Ass. Co.* 2 Crompt. & Jervis, 247. If any thing could be inferred from the nature of the articles named in this policy, it was, that, being heavy, they would be stowed below to serve as ballast, rather than on the deck, whereby the vessel might be rendered crank or top heavy, and so liable to be capsized. The case of *Da Costa* v. *Edmunds* was, as we think, decided in reference to the general usage, respecting the particular property which was disclosed to the underwriters ; and

we cannot suppose that the court intended to overrule the general rule of commercial law, which had been established for ages. The underwriters were to understand, that, according to the usage, vitriol might be carried on deck as a place of safety, instead of being bedded in sand below. And we certainly agree, that if the underwriters are informed of the kind of property, and such property is usually carried on deck for its own safety, particularly, as well as for the safety of the ship and the whole concern, they are to be answerable in the same manner, as if they were expressly told, that the property was to be carried on the deck of the ship.

Suppose the policy, for example, was upon an elephant. It would be expected, that the animal should be carried on the deck, without a particular communication to that effect.

We agree to the cases cited by the counsel for the plaintiffs, as to the usages of and course of trade, as to the place and mode of taking in and discharging the cargo, and the usages touching the manner of conducting the voyages. Take, for example, the well known case of the loss of the sails and rigging of a ship which were burnt on the Bank Saul Island. *Pelly* v. *Royal Exchange Ass. Co.* 1 Burr. 348. The defence was, that the sails and rigging were on the land when they were burnt. The satisfactory answer was, that they were properly placed there, according to the known usage, while the ship was cleaned, heeled and refitted. Many other instances of usages may be found in the cases mentioned by Lord *Mansfield* in the case last cited, of which underwriters are bound to take notice.

We agree to the position which is stated for the plaintiffs, a *settled usage of trade* to which the policy relates, *not contrary to any principle of law*, and not inconsistent with the object and terms of the policy, will be presumed to have been known by the underwriters, and taken into consideration when the contract was made, and will have the same effect as if such usage were inserted in the policy.

But to look more nearly to the usage proved in the case, it does not follow, that because goods not liable to be injured by dampness are usually carried on deck, that it is usual for underwriters to pay for them. The usage stops, *in limine*, or at most, is only one step in the journey. The general rule of

Taunton
Copper Co.
*v.*
Merchants'
Ins. Co.

law which we have considered, supposes that goods are carried on deck ; and the usage proved in the case at bar is not alleged, nor can we presume it, to be a usage which is local or peculiar to the navigation between Taunton and New York. The usage does not find, that underwriters have, in a single instance, ever paid a loss upon goods carried on deck, unless there had been a special contract or unless from the nature of the property the underwriters were, by law, to be presumed to have undertaken that particular risk. Nothing of that is proved here. If these plaintiffs could recover, every person assured may recover for the loss of goods on deck, under a general policy, by proof that such goods are usually carried on deck. So they are ; but they are at the risk of the owners, unless they obtain the assent of the underwriters to take the risk of them.

The case of *Gould* v. *Oliver*, before cited, would seem to refer rather to a usage in a particular trade, viz. to carry timber loaded on deck from Quebec to London. The declaration stated that the defendant, as the owner of the ship and freight, ought to contribute for the timber, which was thrown overboard for the safety of the ship, &c. The defendant pleaded, that there was no custom to pay for the jettison of timber so laden ; and to that the plaintiff demurred, and his demurrer was sustained. In that case no claim appears to be made for contribution from the owners of *the cargo under deck.* The deck load is not put upon the same footing as goods under the deck would be put, in case of a claim for contribution for a jettison. The owners of the cargo are not called upon to contribute. The counsel for the plaintiff admitted, in argument, that insurers are exempted from contribution in respect of the jettison of goods laden on deck. And the case was put upon the custom as applicable merely to the owner of the timber and the owner of the *ship,* upon the custom of a particular trade, and as not affecting the general exemption of underwriters from liability to pay for property on deck ; which is the very question now before the Court. Whatever we may think of that decision, one thing seems to be very clear, that it was not intended to alter or impair the well known general rule of the law exempting underwriters from the payment of losses for property

on deck, unless by express terms or necessary implication such liability has been assumed by them.

The general rule seems to be well established. The plaintiff must show that his case comes within the exception, or, in other words, that the defendants have assumed the risk of the goods on the deck. They prove, that it is usual to carry goods on deck, but fail to prove that underwriters have ever paid for them, unless there was an express undertaking, or one by necessary implication. The former is not suggested, and it seems clear, that no inference could have been drawn from the nature of the goods which were named, to subject the defendants, by implication, to any other risk than is assumed upon property generally, or ordinary goods. The result is, that the nonsuit, which was ordered at the trial, is confirmed.